UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MAUREEN SANDOR, | CASE NO. 1:16CV01670 |
| Plaintiff, | JUDGE JAMES S. GWIN |
| vs. | |
| THE GENERAL ELECTRIC COMPANY, | **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION** |
| Defendant. | |

## I. <u>Statement of Facts</u>

Plaintiff filed this lawsuit due to Defendant's failure to pay her compensation for hours she regularly worked in excess of forty hours in a workweek. Defendant has moved to compel arbitration, but has not produced a single signed document indicating that Ms. Sandor ever agreed to arbitrate this dispute. Defendant possesses all of the documents pertaining to Ms. Sandor's employment, so if a written arbitration agreement existed certainly one would expect Defendant to produce it. Defendant's failure to do so dooms its motion to compel arbitration.

Ms. Sandor began working for Defendant in July, 1979. (Declaration of Maureen Sandor attached as Exhibit 1, para. 2). Defendant did not require her to agree to arbitrate employment disputes at the outset of her employment. (Sandor decl. para. 3) Indeed, during the 26 plus years she was employed Defendant never presented her with an employment agreement or any other document for signature containing an arbitration agreement. (Sandor decl. para. 4) Defendant claims to have initially adopted its Solutions alternative dispute resolution process ("ADR") "in or about" 2009, yet it produced nothing indicating that Ms. Sandor was provided notice of that process or that her assent to it was a condition of continued employment.

Defendant's suggestion that Ms. Sandor was aware of Defendant's ADR process is false. Ms. Sandor did not receive electronic notification of the 2015 "amendments" to the ADR process (to which she never assented in the first place) on August 20, 2015 or August, 31, 2015 as Defendant claims, and Defendant has produced no email messages proving otherwise. (Sandor decl. para. 5)  The affidavit of Jaquinna Bailey claims that Ms. Sandor received an email on August 31, 2015 (Bailey Aff. Para. 7), but the email attached as Exhibit A is not addressed to Ms. Sandor, but rather to Robert Sweat, apparently another employee of GE Lighting. Since Defendant retained the email sent to Mr. Sweat, the only logical inference to be drawn from its failure to produce a similar email sent Ms. Sandor is that no such email was sent. Moreover, nowhere in the August 31 email sent to Mr. Sweat does it state or even suggest that assent to the new version of the ADR process was a condition of continued employment. The same is true of the September 10, 2015 email apparently sent to Mr. Sweat (Bailey Aff. Exhibit B) – nowhere in that email does it indicate that continued employment is contingent on accepting the amended ADR process. Likewise, the October 27, 2015 email attached as Exhibit C to Bailey affidavit, which again does not indicate that it was sent to Ms. Sandor, does not provide any notice that continued employment is contingent on assenting to the amended ADR process. Finally, the Solutions document itself, attached as Exhibit D to the Bailey affidavit, does not state or even suggest that current employees' continued employment is contingent on their acceptance of the Solutions ADR procedure and waiver of their right to sue in Court.

The affidavit of Yaritza Hernandez fairs no better, as none of the attachments indicate that they were sent to Ms. Sandor. For example, Exhibit A contains a "From" line, but is missing the "To" line showing that is was sent to Ms. Sandor. Exhibit B purports to be a notice of the

amendments dated August 31, 2015 but there is absolutely no indication that it was ever sent to Ms. Sandor. This is critical because of all the documents presented by Defendant in support of its motion Hernandez Exhibit B is the only one that indicates that continued employment is contingent on assent to the amended ADR process. If that notice was actually sent to Ms. Sandor as Defendant claims, then Defendant should have an email proving it; no such email has been produced. The only email that Defendant has produced that actually appears to have been sent to Ms. Sandor's email address is Ms. Hernandez's October 27 email forwarding an "ADR Reminder," but that email does ***not*** indicate that Ms. Sandor's assent to the amended ADR process is a condition of her continued employment. In summary, the documents submitted by Defendant in support of its motion do not demonstrate that Ms. Sandor actually received notice of the ADR process, or that she was informed that her assent to the ADR contract was a condition of her continued employment. Absent such evidence Defendant's motion to compel arbitration should be denied.

## II. Law and Argument

Defendant stresses that there is a strong policy favoring arbitration, but that policy only applies when the parties actually entered into a written arbitration agreement. *NTCH-W. Tenn, Inc. v. ZTE USA, Inc.*, No. 111CV01169JDBEGB, 2012 WL 12551251, at *3 (W.D. Tenn. Mar. 30, 2012)(party cannot be compelled to arbitrate a claim that she did not contractually agree to submit to arbitration, "[n]otwithstanding the FAA's policy preferences."). The primary issue here "is whether the parties have agreed to submit their disputes to arbitration, which is a matter of contract." *Jones v. Carrols, L.L.C.*, 2015-Ohio-2250, ¶ 8 (Ninth Dist. App.). State contract law governs the issue of contract formation in this context. *Gragston v. Coca-Cola Refreshments*, No. 1:14-CV-986, 2015 WL 4999260, at *1 (S.D. Ohio July 27, 2015), *report and recommendation*

*adopted*, No. 1:14CV986, 2015 WL 4985087 (S.D. Ohio Aug. 21, 2015)(applying Ohio contract law to determine if arbitration agreement exists). Defendant must prove that the parties entered into a contract providing for mandatory arbitration, as "a company cannot unilaterally impose a mandatory binding-arbitration policy on an employee without her assent." *Lee v. Red Lobster Inns of America*, 92 Fed.Appx. 158, 161-62 (6th Cir.2004)("the company cannot just adopt a policy that it cannot be sued by its employees and thereby make it so. For an arbitration agreement to be binding, it must be an agreement, not merely a company policy."). As Defendant has failed to point to a written arbitration agreement executed or electronically acknowledged by Ms. Sandor, the only way Defendant can compel arbitration is by demonstrating that Ms. Sandor continued her employment after being explicitly informed that her assent to the ADR contract was a condition of continued employment. The Solutions program document itself does not state that assent to the ADR process is a condition to continued employment or that continued employment constituted acceptance of the ADR contract. Because Ms. Sandor never expressly or implied assented to the arbitration agreement Defendant's motion should be denied.

Defendant attempts to side-step the absence of a signed arbitration agreement by relying on negative consent cases to bind Ms. Sandor to the amended ADR document, but those cases are easily distinguished. In *Dantz v. Am. Apple Grp.*, LLC, 123 F. App'x 702, 708 (6th Cir. 2005), the plaintiff employee actually received a copy of the dispute resolution program and the employer held a meeting to explain the program at which the plaintiff received additional information. The program document itself stated in bold letters "**THIS PROGRAM IS A CONDITION OF YOUR EMPLOYMENT AND IS THE MANDATORY AND EXCLUSIVE MEANS BY WHICH THOSE PROBLEMS MAY BE RESOLVED**." The plaintiff was also provided with a

4

separate two page agreement that specifically started that is was a "mutual promise to resolve claims by binding arbitration," which the plaintiff signed under protest. In light of this mountain of evidence of actual notice and explicit warning that continued employment constituted assent the *Dantz* court affirmed the District Court's order compelling arbitration. *Dantz,* 123 F. App'x at 708 ("Mutual assent is manifested by Dantz's continued employment after having been told explicitly that the arbitration agreement was a condition of her employment."). In contrast, Ms. Sandor did not receive the ADR document, Defendant held no meeting explaining the ADR program, Ms. Sandor did not sign any type of document agreeing to the ADR process, and Defendant's ADR document does not state that employee agreement is a condition of continued employment or that continued employment constitutes assent. None of the factors supporting a finding of implied assent in *Dantz* are present here.

The second negative consent case cited by Defendant is *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967 (6th Cir. 2007), applying Tennessee law. In *Seawright* the "written materials accompanying the arbitration agreement clearly stated that continued employment after the effective date of the EDR Program would constitute the employee's acceptance of the agreement to arbitrate." That fact was critical to the outcome, as the *Seawright* court distinguished *Lee v. Red Lobster Inns of America*, 92 Fed.Appx. 158 (6th Cir.2004), noting "the agreement at issue in *Lee* did not contain any provision that stipulated continued employment would constitute acceptance." *Seawright*, 507 F.3d at 972–73. The situation here is the same as *Lee* instead of *Seawright*, because Defendant's ADR document does not contain any provision that stipulated continued employment would constitute acceptance. *See, also, Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 762 (9th Cir.1997)(holding that the unilateral promulgation of an arbitration policy by an employer

5

does not constitute an arbitration agreement unless the employee is explicitly told that continued employment constitutes assent).

Finally, Defendant relies on *Gragston v. Coca-Cola Refreshments*, No. 1:14-CV-986, 2015 WL 4999260, at *2 (S.D. Ohio July 27, 2015), *report and recommendation adopted*, No. 1:14CV986, 2015 WL 4985087 (S.D. Ohio Aug. 21, 2015), but in that case the employee attended a training session on both the 2013 amended ADR program and a prior 2005 version, and signed an acknowledgment form attesting to his attendance. Moreover, the ADR program document itself stated:

> An Employee who is employed by The Coca–Cola Company in the United States of America ... expresses his or her agreement to be bound by the terms of this Program by either (a) signing a written agreement expressing his or her acceptance of the terms of this Program or (b) choosing to continue his or her employment with the Coca–Cola company after being provided a copy of this Program and being informed that continuing his or her employment after the Effective Date constitutes acceptance of the terms of this Program.
> \* \* \*
> The legal consideration provided to an Employee by The Coca–Cola Company for this Program (and any modification of this Program) includes, but is not necessarily limited to ... the Employee's employment or continued employment with The Coca Cola Company.

*Gragston v. Coca-Cola Refreshments*, No. 1:14-CV-986, 2015 WL 4999260, at *2. Again, the situation here contrasts with *Gragston* because Defendant's ADR document does not explicitly condition continued employment on acceptance of the ADR contract. Absent actual notice that continued employment forms an arbitration contract no such contract can be formed.

Finally, under Ohio law an arbitration contract cannot be formed unless the employee has actual notice of the program and that continued employment constitutes acceptance of it. *Jones v. Carrols, L.L.C.*, 2015-Ohio-2250, ¶ 8 (Ninth Dist. App.)("Axiomatically, a party cannot assent to a

term of which the party is unaware. If Mr. Jones did not have actual knowledge of the MAP, there is simply no way he could have assented to it, and, therefore, it would be impossible to conclude that he had agreed to its terms."). As the *Jones* court noted, Ohio has not adopted the "reasonable efforts" standard – actual notice is required. Here Ms. Sandor was not aware of the ADR process, and she was never told that her continued employment constituted assent to be bound by that program. Defendant portrays the Solutions ADR process was a widely known program, but the facts belie that claim. As Ms. Sandor attests, when she was trying to resolve this dispute with Ms. Bailey and other GE managers none of them ever mentioned the Solutions program. (Sandor decl. para. 6-7). If that ADR process was so widely known certainly the human resource manager should have known about it and at least mentioned it to Ms. Sandor. The truth of the matter is that the Solutions program was not widely known or understood, and Ms. Sandor did not even know about it until Defendant filed this motion. Under such circumstances no contract requiring arbitration and waiving the right to sue in court could possibly be formed.

## III. <u>Conclusion</u>

For all of the foregoing reasons the Court should deny Defendant's motion to compel arbitration and stay litigation.

> Respectfully submitted,
> */s/ James A. DeRoche*
> James A. DeRoche (#0055613)
> **GARSON JOHNSON LLC**
> 101 W. Prospect Avenue
> 1610 Midland Building
> Cleveland, OH 44115
> Phone: (216) 696-9330
> Email: jderoche@garson.com
> *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants today August 5, 2016.

/s/ James A. DeRoche
James A. DeRoche, Esq. (#0055613)
**GARSON JOHNSON LLC**

*Attorney for Plaintiff*

8