UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------

|  |  |  |
|---|---|---|
| MAUREEN SANDOR, | : | CASE NO. 16-CV-1670 |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| vs. | : | OPINION & ORDER |
|  | : | [Resolving Docs. 4, 6, 7] |
| GENERAL ELECTRIC COMPANY, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Maureen Sandor sues Defendant General Electric ("GE") for violating the Fair Labor Standards Act ("FLSA") and Ohio Minimum Fair Wage Standards.[1] Plaintiff says Defendant failed to pay her for overtime she earned over a three-year period.[2] Defendant GE moves this Court to compel arbitration, alleging that Plaintiff Sandor agreed to arbitrate employment disputes.[3] Plaintiff opposes.[4]

For the following reasons, this Court **DENIES** Defendant GE's motion to compel arbitration.

### I. Background

Plaintiff Sandor has worked for Defendant GE since 1979.[5] No collective bargaining agreement controlled Sandor's terms of employment.

---

[1] Doc. 1.
[2] Doc. 1 at ¶ 7, 10.
[3] Doc. 4 at 1.
[4] Doc. 6.
[5] *Id.* at 1.

Case No. 16-cv-1670
Gwin, J.

In or about 2009, GE instituted "Solutions"—an employment dispute resolution procedure that culminates in mandatory arbitration.[6] The Solutions policy states "all company employees . . . are covered by this Procedure *if they were notified* of their of their participation in Solutions at any time on or after July 1, 2008."[7] In disputing that she is compelled to arbitrate the overtime claim, Sandor says she never received notice of the Solutions policy in 2009 or any time thereafter.[8]

In 2015, Defendant GE amended the Solutions' policy. GE says that the policy's "Continued Employment Clause" conditioned GE employees' continued employment on their acceptance of the modified policy.[9]

On August 20, 2015, GE emailed employees, telling them that the company had amended Solutions and that the changes would go into effect November 1, 2015. The email asked employees to follow a hyperlink where employees could view the new policy and acknowledge that they received notice of the changes.[10]

On August 31, 2015 and September 10, 2015, GE sent reminder emails to employees concerning the Solutions amendments. The emails instructed employees to follow a hyperlink, review the new Solutions policy, and then click a "submit" button to confirm their review.[11] The hyperlink transported GE employees to several documents, including a notice stating that the amendments would apply "as a condition of continued employment" after November 1, 2015.[12]

---

[6] Doc. 4 at 2-3.
[7] Doc. 4-1 at 39 (emphasis added). Although the policy itself references July 1, 2008, Defendant GE says that Solutions went into effect "in or about" 2009. Doc. 4 at 3.
[8] Doc. 6 at 1.
[9] Doc 4 at 3.
[10] Doc 7-1 at 33.
[11] Doc. 4-1 at 3-4. GE sent the August 31, 2015 reminder email to Sandor. Doc 7-1 at 37.
[12] Doc. 7-1 at 34.

Case No. 16-cv-1670
Gwin, J.

Finally, on October 27, 2015, a GE human resources manager emailed those employees who had not yet acknowledged receipt of the Solutions amendments. The email directed employees to review the Solutions changes and to acknowledge receipt. The message also informed employees that the Solutions amendments "will go into effect November 1, 2015, whether or not you have formally acknowledged."[13]

The hyperlinks in these emails connected to Sandor's Document and Policy Manager System ("DPMS"). The DPMS is GE's internal database that GE uses to assign employees relevant policy documents.[14] GE uploaded the Solutions policy to Sandor's DPMS.[15] Additionally, on August 31, 2015 the Defendant added a document to Sandor's DMPS informing her that the Solutions amendments would apply "as a condition of continued employment" after November 1, 2015.[16] This document was the only notice that included the Continued Employment Clause.

Plaintiff Sandor says that she never agreed to arbitrate her employment disputes through the Solutions procedure.[17] Although she denies reading the emails prior to litigation, she points out that none of the emails stated that the Solutions amendments would apply as a condition of her continued employment.[18] Furthermore, the Solutions policy itself does not include express language conditioning continued employment at GE on acceptance of the policy.[19]

---

[13] Doc. 4-2 at 6-8.
[14] Doc. 7-1 at 1-2.
[15] Doc. 4 at 8.
[16] *Id.*; Doc. 4-1 at 3; Doc. 7-1 1-2, 34, 37.
[17] Doc. 6-1.
[18] Doc. 6 at 2.
[19] Doc. 4-1 at 6-34.

-3-

Case No. 16-cv-1670
Gwin, J.

### II. Legal Standard

The Federal Arbitration Act (FAA), 9 U.S.C. § 1, et seq., provides that where a "party [is] aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [it] may petition" for an order compelling arbitration and staying proceedings in federal court "until such arbitration has been had in accordance with the terms of the agreement."[20] The FAA manifests a strong "federal policy favoring arbitration agreements," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."[21] "Federal law demands that courts rigorously enforce arbitration agreements."[22]

In deciding a motion to compel arbitration, courts treat the evidence presented as they do on a motion for summary judgment.[23] Accordingly, courts should "consider facts in the light most favorable to the Plaintiff when determining whether a valid and enforceable arbitration agreement exists and exercise its wide discretion to look beyond the complaint at pleadings and documents submitted by either party."[24]

Like any contract, arbitration agreements require the parties' mutual assent to be bound by the agreement.[25] State contract law governs questions of mutual assent.[26] Under Ohio law, "[a]ssent to the terms of an otherwise enforceable arbitration agreement as a condition of continued employment is an acceptable and legally enforceable requirement."[27] However, an

---

[20] 9 U.S.C. §§ 3 & 4.
[21] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).
[22] *Rupert v. Macy's, Inc*., 2010 WL 2232305, at *4 (N.D. Ohio June 2, 2010).
[23] *Rupert,* 2010 WL 2232305 at *3; *Anderson v. Delta Funding Corp*., 316 F.Supp.2d 554, 558 (N.D. Ohio 2004).
[24] *Anderson,* 316 F.Supp.2d at 558.
[25] *AT & T Tech., Inc. v. Communications Workers of America,* 475 U.S. 643, 648 (1986).
[26] *Perry v. Thomas,* 482 U.S. 483, 492 n.9 (1987).
[27] *Jones v. U-Haul Co. of Massachusetts & Ohio Inc.*, 16 F. Supp. 3d 922, 938 (S.D. Ohio 2014); *Dantz v. Am. Apple Grp., LLC.*, 123 F. App'x 702, 707-08 (6th Cir. 2005).

Case No. 16-cv-1670
Gwin, J.

arbitration agreement is unenforceable if a party does not have notice of the agreement.[28] Ohio courts use an "actual notice" standard when analyzing notice unless there is a signed arbitration agreement.[29]

### III. Analysis

Plaintiff Sandor cannot be bound by an arbitration agreement she did not accept. Defendant GE argues that Plaintiff Sandor's continued employment at GE after November 1, 2015, the day the Defendant's Continued Employment Policy kicked in, manifests an agreement to arbitrate. Had GE given Plaintiff Sandor actual notice that it conditioned her continued employment on her acceptance of the Solutions amendment, GE's argument would win. Although it is a close call, this Court finds that Defendant GE lacks sufficient evidence to show it gave Sandor actual notice.

Actual notice requires that Defendant GE made Plaintiff Sandor actually aware that her continued employment at GE required acceptance of Solutions.[30] GE sent Sandor four emails informing her of the changes to the Solutions procedure. None of these four emails nor the Solutions policy itself included a Continued Employment Clause. Only the August 31, 2015 document GE added to Sandor's DMPS included the Continued Employment Clause. However, the Defendant does not show evidence that Plaintiff Sandor opened the August 31 document in DMPS. GE does not show that Sandor received actual notice.

---

[28] *See Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315 (6th Cir. 2000); *Lake Land Employment Group of Akron, LLC v. Columber*, 804 N.E. 2d 27, 32 (2004).
[29] *Jones v. Carrols, L.L.C.*, 2015 WL 3623760, *3 (Ohio Ct. of App. 2015) ("Although there are a number of cases dealing with the question of whether a party had reasonable notice of the arbitration agreement, this Court has not found a case from Ohio applying the reasonable notice standard in the absence of a signed contract."); *see also*, *Dantz*, 123 F. App'x 708 (6th Cir. 2005) ("Mutual assent is manifested by Dantz's continued employment after *having been told explicitly* that the arbitration agreement was a condition of her employment.") (emphasis added).
[30] Actual notice means that a party has actual knowledge of a subject. *See, e.g., Jones v. Carrols, L.L.C.*, 2015 WL 3623760, *3 (Ohio Ct. of App. 2015).

-5-

Case No. 16-cv-1670
Gwin, J.

Defendant GE points to instances where courts within the Sixth Circuit have upheld arbitration agreements based on continued employment clauses.[31] However, these cases involve one of two factors that are not present here: either the case parties had actual notice of arbitration agreements,[32] or non-Ohio law applied to the case.[33]

Defendant GE also says that its October 27, 2015 email to Plaintiff Sandor gave her actual notice. Even if the Court assumes that Plaintiff read the email, it states only that the Solutions amendments "will go into effect November 1, 2015, whether or not you have formally acknowledged." Neither this email nor the Solutions policy itself included the Continued Employment Clause. Therefore, neither provided Sandor with actual notice that she would be bound to arbitrate employment disputes if she showed up for work November 1, 2015.

As a general matter, the Court agrees with requiring actual notice when a company conditions continued employment on its employees' acceptance of arbitration agreements. In this case, the Court may have held differently if, for instance, GE had included the Conditional Employment Clause in the four emails it sent to Plaintiff Sandor as opposed to a separate document housed behind a link. But, today, this Court rules only on the specific facts before it.

---

[31] Doc. 7 at 4-5.

[32] For instance, GE says the notice an employer gave in *Dantz v. Am. Apple Grp., LLC.*, 123 F. App'x 702, 703 (6th Cir. 2005) shows the adequacy of the notice GE gave Sandor. However, in *Dantz*, the employee "received copies of the Program and attended group training sessions relating to the Program." *Id.* Here, the Defendant never held a Solutions training session and it cannot show that the Plaintiff ever actually received the document with the Conditioned Employment Clause. *See also*, *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 852 (S.D. Ohio 2003) ("[Defendant] had not asked [Plaintiff] for his express consent to the arbitration policy, but he did understand that the only way to avoid its effect was to resign."); *Jones v. U-Haul Co. of Massachusetts & Ohio Inc.*, 16 F. Supp. 3d 922, 927 (S.D. Ohio 2014) (plaintiff had actual notice of the arbitration agreement).

[33] *See, e.g.*, *Mannix v. Cty. of Monroe*, 348 F.3d 526, 536 (6th Cir. 2003) (applying Michigan law which requires only reasonable notice, not actual notice).

Case No. 16-cv-1670
Gwin, J.

### IV. Conclusion

For the forgoing reasons, this Court **DENIES** Defendant GE's motion to compel arbitration.

IT IS SO ORDERED.


Dated:  November 22, 2016                             *s/         James S. Gwin*
                                                      JAMES S. GWIN
                                                      UNITED STATES DISTRICT JUDGE